UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

YOVANNY DOMINGUEZ AND ON BEHALF OF
ALL OTHER PERSONS SIMILARLY
SITUATED,

                 Plaintiffs,

      v.

ADRIA OPERATING CORPORATION,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ECF CASE

No.:    1:19-cv-6723

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

INTRODUCTION

1.     Plaintiff, YOVANNY DOMINGUEZ, on behalf of himself and all other persons similarly situated ("Plaintiff"), asserts the following claims against Defendant, ADRIA OPERATING CORPORATION, as follows.

2.     Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet their definition have limited vision. Others have no vision.

3.     Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4.      Plaintiff asserts claims under the Americans With Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") against Defendant.  Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby and in conjunction with its physical location, is a violation of Plaintiff's rights under the ADA.

5.      Plaintiff is being deterred from patronizing the Defendant's physical location due to Defendant's discrimination by failing to maintain access to the Website for visually-impaired consumers. Plaintiff intends to return to Defendant's Website and hotel location once Defendant ceases its on-going discriminatory practices.

6.      Because Defendant's website WWW.ADRIAHOTELNY.COM,  (the "Website" or "Defendant's Website") is not equally accessible to blind and visually-impaired consumers and violates the ADA for its failure to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. The Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers.

7.      Because Defendant's Website WWW.ADRIAHOTELNY.COM is not equally accessible to blind and visually-impaired consumers because it violates the ADA and fails to identify and describe accessible features in the hotel and guest rooms offered through its reservations service on its Website in enough detail to reasonably permit individuals with disabilities such as the Plaintiff to assess independently whether a given

hotel or guest room meets his or her accessibility needs, it violates the provisions of the ADA including certain regulations promulgated thereunder (28 C.F.R. § 36.302(e)(1)).

8.      Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's Website will include information as to accessibility features in their hotel and guest rooms to reasonably permit individuals with disabilities, including Plaintiff, to assess independently whether Defendant's hotel or guest rooms meet his or her accessibility needs so that Defendant's hotel becomes and remains accessible to blind and visually-impaired consumers. *See, Poschmann v. Coral Reef of Key Biscayne Developers, Inc.,* (U.S.D.C. SDFL, May 23, 2108), WL 3387679, Lexis 87457.

## JURISDICTION AND VENUE

9.      The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

10.     The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's New York State Human Rights Law, N.Y. Exec. Law Article 15, ("NYSHRL") and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") claims.

11.     Venue is proper in this District under 28 U.S.C. §1391(b)(1) and (2) because Defendant does business by owning, managing, operating and/or marketing  a hotel in New York to residents in this District and would thereby be considered a resident of this District if it were a separate state and 28 U.S.C. §1391(d) because a substantial

part of the events giving rise to this claim occurred in this District due to the Plaintiff attempting to access the Defendant's website from his home in Bronx, NY.

12.     Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Southern District of New York that caused injury, and violated rights the ADA prescribes to Plaintiff and to other blind and other visually impaired-consumers. Plaintiff has been denied the full use and enjoyment of the Defendant's facilities, goods, and services of Defendant's physical hotel as a result of Defendant's failure to include information relating to the accessibility features of its facilities and information relating to its accessible guest rooms in enough detail on its reservation system to permit Plaintiff to access whether the facility and/or the guest room meets its individual needs. The lack of information on the Website reservation system has caused a denial of Plaintiff's full and equal access to Defendant's hotel.

13.     Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services of Defendant's Website with respect to Defendant's hotel located in New York. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from visiting Defendant's brick-and mortar hotel location. This includes, Plaintiff attempting to obtain information about Defendant's hotel location and hours, book a room or make a reservation, check availability and prices, browse photo gallery, details about the banquet hall, guest rooms and amenities, search reviews and events archives and to learn about and other important information.

14.     The Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

THE PARTIES

15.     Plaintiff, YOVANNY DOMINGUEZ, at all relevant times, is a resident of Bronx, New York. Plaintiff is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the NYSHRL and NYCHRL.

16.     On information and belief, Defendant, ADRIA OPERATING CORPORATION, is and was, at all relevant times herein a Domestic Business Corporation organized under the laws of New York with its principal office in Bayside, NY.  Defendant jointly owns, operates and manages its hotel location as well as the WWW.ADRIAHOTELNY.COM website, and those affiliated or directly linked, and advertises, markets, offers and sells its hotel services to residents within the State of New York and throughout the United States.

17.     Defendant's website gives access to their hotel's reservation system by way of offering a link on their website. These links on the Defendant's website connect its users with the reservation of system of their hotel so that users may make a reservation and/or contact the property for more information, including the ability to book a room or make a reservation, check availability and prices, browse photo gallery, details about the banquet hall, guest rooms and amenities, search reviews and events archives and to learn about and other important information.

18.     Defendant's hotel location is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendant's Website is a service, privilege, or advantage that is heavily integrated with Defendant's physical location and operates as a gateway thereto.

NATURE OF ACTION

19.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, choosing hotel accommodations, as well as many other activities for sighted, blind and visually-impaired persons alike.

20.     In today's tech-savvy world, blind and visually-impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. Their technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may independently access the Internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, and services contained thereon.

21.     Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

22.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

23.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities, most Courts and government agencies to ensure their websites are accessible.

24.     Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

        a.      A text equivalent for every non-text element is not provided;

        b.      Title frames with text are not provided for identification and navigation;

        c.      Equivalent text is not provided when using scripts;

        d.      Forms with the same information and functionality as for sighted persons are not provided;

        e.      Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

        f.      Text cannot be resized without assistive technology up to 200% without losing content or functionality;

        g.      If the content enforces a time limit, the user is not able to extend, adjust or disable it;

        h.      Web pages do not have titles that describe the topic or purpose;

        i.      The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

        j.      One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

        k.      The default human language of each web page cannot be programmatically determined;

        l.      When a component receives focus, it may initiate a change in context;

        m.      Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

        n.      Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

        o.      In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

        p.      Inaccessible Portable Document Format (PDFs); and,

q.     The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

25.     On March 15, 2012, the revised regulations implementing Title III of the ADA took effect, imposing significant new obligations on inns, motels, hotels and other "places of lodging," specifically, 28 C.F.R. § 36.302(e)(i) provides that:

Reservations made by places of lodging.  A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in person, or by a third party ---

(i)     Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

(ii)    Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;

(iii)   Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type;

(iv)    Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservation systems; and

(v)     Guarantee that the specific accessible guest room or guest rooms reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others

26.     Hotels are required to identify and describe all accessible features in the hotel and guest rooms; "[t]his requirement is essential to ensure individuals with disabilities receive information they need to benefit from the services offered by the place

of lodging." 28 C.F.R. Part 36, Appx. A. Moreover, "a public accommodation's designation of a guest room as 'accessible' does not ensure necessarily that the room complies with all of the 1991 Standards." 28 C.F.R. Part 36, Appx. A. Labeling a guest room as "accessible" or "ADA" is not sufficient.  Accordingly, Defendant is required to set forth specific accessible features and not merely recite that a guest room is "accessible" or "ADA compliant" or list accessibility features that may (or may not) be offered within a particular room.

27.    For hotels in buildings constructed after the effective date of 1991, such as many of Defendant's hotels the regulations provide that it is sufficient to advise that the hotel itself is fully ADA compliant, and for each accessible guest room, to specify the room type, the type of accessible bathing facility in the room, and the communications features in the room.  28 C.F.R. Part 36, Appx. A. For hotels built before the effective date in 1991, there is detailed information relating to the description of individual accessibility features that the hotel is also required to disclose.

28.    In promulgating these new requirements, it is clear that the intention of the Department of Justice is to ensure that individuals with disabilities should be able to reserve hotel rooms with the same efficiency, immediacy, and convenience as those who do not need accessible guest rooms. 28 C.F.R. Part 36, Appx. A.

STATEMENT OF FACTS

Defendant's Barriers on Its Website

29.    Defendant        offers        the        commercial        website WWW.ADRIAHOTELNY.COM to the public. The website offers features which should allow all consumers to access the goods and services which Defendant offers in

connection with their physical location. The goods and services offered by Defendant include, but are not limited to the following, which allow consumers to: find information about hotel location and hours of operation, book a room or make a reservation, check availability and prices, browse photo gallery, details about the banquet hall, guest rooms and amenities, search reviews and events archives and to learn about and other important information.

30.    It is, upon information and belief, Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's website, and to therefore specifically deny the goods and services that are offered and integrated with Defendant's hotel. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's hotel and the numerous goods, services, and benefits offered to the public through the Website.

31.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient JAWS screen-reader user and uses it to access the Internet. Plaintiff has visited the Website on separate occasions using the JAWS screen-reader.

32.    During Plaintiff's visits to the Website, the last occurring in June, 2019, Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the facilities, goods and services offered to the public and made available to the public; and that denied Plaintiff the full enjoyment of the facilities, goods, and services of the Website, as well as to the facilities, goods, and services of Defendant's physical locations in New York by being unable to learn more information on the hotel location and hours,

the ability to book a room or make a reservation, check availability and prices, browse photo gallery, details about the banquet hall, guest rooms and amenities, search reviews and events archives and to learn about and other important information.

33.    While attempting to navigate the Website, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to, the following:

a.    Lack of Alternative Text ("alt-text"), or a text equivalent. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually-impaired ADRIA HOTEL customers are unable to determine what is on the website, browse, look for hotel location and hours of operation, various promotions, items sold in the gift shop, and access to various other goods and services;

b.    Empty Links That Contain No Text causing the function or purpose of the link to not be presented to the user. They can introduce confusion for keyboard and screen-reader users;

c.    Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen-reader users; and

d.    Linked Images Missing Alt-text, which causes problems if an image within a link contains no text and that image does not provide alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.

<u>Defendant Must Remove Barriers To Its Website</u>

34.    Due to the inaccessibility of Defendant's Website, blind and visually-impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Defendant offers to the public on its Website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from accessing the Website.

35.    These access barriers on Defendant's Website have deterred Plaintiff from visiting Defendant's physical hotel location, and enjoying them equal to sighted individuals because: Plaintiff was unable to find the location and hours of operation of Defendant's physical hotel on its Website and other important information, preventing Plaintiff from visiting or returning to the location, book a room or make a reservation, check availability and prices, browse photo gallery, details about the banquet hall, guest rooms and amenities, search reviews and events archives and to learn about and other important information.

36.    If the Website was equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.

37.     Through his attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

38.     Because simple compliance with the WCAG 2.0 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a.     Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;

b.     Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

c.     Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

39.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

40.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . their title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

41.     Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.0 guidelines for Defendant's Website. Plaintiff seeks that their permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

a.     Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.0 guidelines;

b.     Regularly check the accessibility of the Website under the WCAG 2.0 guidelines;

c.     Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies under the WCAG 2.0 guidelines; and,

d.     Develop an accessibility policy that is clearly disclosed on Defendant's Websites, with contact information for users to report accessibility-related problems.

42.     If the Website was accessible, Plaintiff and similarly situated blind and visually-impaired people could independently view options to book a room or make a reservation, check availability and prices, browse photo gallery, details about the banquet hall, guest rooms and amenities, search reviews and events archives and to learn about and other important information.

43.    Although Defendant may currently have centralized policies regarding maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

44.    Defendant has, upon information and belief, invested substantial sums in developing and maintaining their Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making their Website equally accessible to visually impaired customers.

45.    Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website, violating their rights.

<u>Defendant's Website and Compliance with</u>

<u>Requirement to Describe Accessibility Features</u>

46.    Defendant owns and operates a hotel in New York. This location also offers dining and entertainment options, including on-site restaurants, room service and lobby lounges.

47.    Defendant's Website offers features to the public that should allow all consumers to access the facilities and services that it offers about their hotel. The Website is heavily integrated with their hotel, serving as their gateway.

48.    It is, upon information and belief, Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, using Defendant's Website access to information through their reservation system relating to the availability of ADA compliant rooms and handicap accessible features of the hotel, and to therefore specifically deny the goods and services that are offered and integrated with Defendant's

hotel. Due to Defendant's failure and refusal to add information through their reservation system relating to its accessibility for visually-impaired persons on their Website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's hotel and the numerous goods, services, and benefits offered to the public at Defendant's hotel.

49.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient JAWS screen-reader user and uses it to access the Internet. Plaintiff has visited the Defendant's Website on separate occasions using the JAWS screen-reader.

50.    During Plaintiff's visits to the Website, last occurring in March, 2019, Plaintiff was not able to determine from the reservation system on the Website what ADA compliant features, if any, the hotel offers and whether the guest rooms have handicap accessible facilities or communications equipment in the guest rooms suitable to blind or visually-impaired persons.  As a result, Plaintiff has been denied full and equal access to the facilities, goods and services offered to the public and made available to the public; and that denied Plaintiff the full enjoyment of the facilities, goods, and services of Defendant's physical location in New York State by being unable to learn any information about the accessibility features of the hotel or its guest rooms.

Defendant Must Include Information Relating to ADA Compliant Rooms

and Handicap Accessibility Features Through Its Website Reservation System

51.    Due to the lack of information relating to the accessibility features of Defendant's hotel through the reservation system on the Website, blind and visually-impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally

use or enjoy the facilities, goods, and services Defendant offers to the public in their hotel. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis using the services that the hotel offers to the public because of the lack of information on accessibility through the reservation system on the Website. Plaintiff intends to visit Defendant's hotel or book rooms in Defendant's hotel in the future if the Plaintiff was able to learn about the accessibility of Defendant's hotel and guest rooms for blind and vision-impaired persons through the reservation system on their website and those accessibility features meet the needs of the Plaintiff.

52.    These access barriers on Defendant's Website reservation system have deterred Plaintiff from visiting Defendant's physical location, and enjoying them equal to sighted individuals because: Plaintiff was unable to find information on the Website reservation system relating to the accessibility of the hotel guest rooms for blind and visually-impaired people and other important information, preventing Plaintiff from reserving a room at the hotel, staying at the hotel and using the facilities of the hotel including its conference center.

53.    If the hotel and the Website reservation system were equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.

54.    Through visiting the Website, Plaintiff has actual knowledge of the lack of information on accessibility features available on the reservation system on the Website that result in making the services and facilities of the hotel inaccessible and independently unusable by blind and visually-impaired people.

55.    Because simple compliance with the provisions of the ADA relating to providing information about accessibility features of the hotel and the guest rooms on its Website reservation system would provide Plaintiff and other visually-impaired consumers with equal access to the services and facilities at Defendant's hotel, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including, but not limited to, the failure to provide information on its Website reservation system sufficient to advise that the hotel is fully ADA compliant, and for each accessible guest room, to  specify the room type, the type of accessible facility in the room, and the communications features in the room.

56.    Defendant therefore use standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

57.    The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

58.    Because Defendant's Website reservation system has never included the required information, and because Defendant lacks a corporate policy that is reasonably calculated to cause the Website reservation system to include the required information relating to accessibility, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with the  ADA regulations

requiring certain accessibility information to be included on Defendant's Website reservation system. Plaintiff seeks that their permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

      a.    Train Defendant's employees and agents who develop the Website for accessibility and compliance to identify and describe accessible features in the hotel and guest rooms on the Website reservation system and a statement that the hotel is fully ADA compliant, and for each accessible guest room, to specify the room type, the type of accessible facility in the room including a detailed description of the features of such facility so that a blind or visually-impaired person can determine if the features meet such person's needs, and the communications features in the room including a detailed description of the communications features so that a blind or visually-impaired person can independently determine if the features meet such person's needs, including, but not limited to:

      1.  Whether Defendant's employees and agents such as managers, bell staff, doormen, concierges, transportation providers, security personnel, front desk and other staff are trained to assist blind and vision-impaired guests with basic needs such as: completing the hotel registration; learning about and completing service requests like laundry, dry cleaning, valet, shipping, room service, etc.; reviewing the hotel bill and charges; counting and identifying currency; using a signature guide or template in conjunction with their credit card; using a passcard-type of key; luggage rooms, business center, gym or health club, lounge facilities, rest rooms; orienting guests to hotel and guest room layouts; location of fire alarms, emergency exits and equipment; heating

and air conditioning controls; TV remote controls;  message retrieval system; automated wake-up systems; and safe deposit box.

2.  Whether Defendant accepts guide dogs and, if so, if there are any charges associated with the guide dogs, their policies with respect to guide dogs and if there are any rest areas for guide dogs.

3.  Whether the hotel provides a braille and/or large print menu for restaurants and/or room service and, in the alternative, if they have trained staff to read the menu to blind or vision-impaired guests.

4.  Whether or not emergency exit signs are compliant with ADAAG[1] requirements and emergency evacuation plans and information are provided in braille and large print.

5.  Whether or not all accessible signage complies with the requirements of the ADAAG.

6.  Whether or not the stairs, escalators and elevators comply with ADAAG standards, such as braille for floor numbers in the elevator and a verbal annunciator for each floor.

7.  Whether or not the hotel has removed or protected protruding objects which protrude more than 4" into walkways and hallways such as drinking

---

[1] ADA Accessibility Guidelines promulgated by the United States Access Board

fountains, fire extinguishers, and planters and if they provide cane detectable warnings for the underside of stairways.

8.    Whether or not the guest rooms contain tactile and large print thermostat controls and talking/large print clocks.

9.    Whether or not signage in the hotel can be easily located by blind and vision-impaired persons with 2" minimum height raised letters and braille characters centered at 60" above the finished floor to indicate floor numbers, rest rooms, lobby, vending and ice machines and all other hotel facilities and amenities.

b.    Regularly check the accessibility of the Website and its reservation system under the WCAG 2.0 guidelines;

c.    Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's Website and the reservation system complies under the WCAG 2.0 guidelines; and

d.    Regularly check the hotel and the guest rooms to ensure that the accessibility features that they describe on its website reservation system are in fact available and properly maintained.

59.    If the ADA-required information is included on the Website reservation system, Plaintiff and similarly situated blind and visually-impaired people could independently determine through use of the Website if Defendant's hotel and guest rooms are ADA compliant and if the facilities described relating the facilities and

communications equipment in guest rooms are acceptable to the Plaintiff and similarly situated blind and visually-impaired people

60.    Although Defendant may currently have centralized policies regarding maintaining and operating its Website and the inclusion of information on the Website, Defendant lacks a plan and policy reasonably calculated to include the ADA-required information on the Website reservation system to make such information fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

61.    Defendant has, upon information and belief, invested substantial sums in developing and maintaining the Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of including the information required under the ADA regulations on the Website reservation system in order to make its facilities and guest rooms equally accessible to visually impaired customers.

62.    Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website reservation system to obtain information relating to ADA accessibility of the hotel and their guest rooms, violating their rights.

## CLASS ACTION ALLEGATIONS

63.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website to obtain the ADA-required accessibility information and as a result have been denied

access to the equal enjoyment of goods and services offered in Defendant's physical location, during the relevant statutory period.

64.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York State subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access Defendant's Website to obtain the ADA-required information and as a result have been denied access to the equal enjoyment of goods and services offered in Defendant's physical locations, during the relevant statutory period.

65.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access Defendant's Website to obtain the ADA-required information and as a result have been denied access to the equal enjoyment of goods and services offered in Defendant's physical locations, during the relevant statutory period.

66.    Common questions of law and fact exist amongst Class, including:

a.    Whether Defendant's Website reservation system contains the information on accessibility required under the ADA regulations;

b.    Whether Defendant's Website is a "place or provider of public accommodation" under the NYSHRL or NYCHRL;

c.    Whether Defendant's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA; and

d.      Whether Defendant's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL or NYCHRL.

67.     Plaintiff's claims are typical of the Class. The Class, similarly to the Plaintiff, are severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA, NYSHRL or NYCHRL by failing to include the ADA-required information on the Website reservation system so individuals with disabilities can independently assess if Defendant's hotel or guest rooms meet the accessibility needs of the Plaintiff and the Class.

68.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

69.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of their litigation.

70.     Judicial economy will be served by maintaining their lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the

judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

FIRST CAUSE OF ACTION<br>VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

71.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

72.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

73.    Defendant's hotel is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(A). Defendant's Website is a service, privilege, or advantage of Defendant's hotel. The Website is a service that is integrated with the Defendant's hotel and is a gateway thereto.

74.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

75.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation,

which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

76.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

77.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the ADA-required information on the Website reservation system, and, as a result, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

78.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL

79.     Plaintiff, on behalf of himself and the New York State Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

80.     N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

81.     Defendant's physical location is located in the State of New York and constitute a place of public accommodation within the definition of N.Y. Exec. Law § 292(9). Defendant's Website is a service, privilege or advantage of Defendant. Defendant's Website is a service that is heavily integrated with these physical locations and is a gateway thereto.

82.     Defendant is subject to New York Human Rights Law because it owns and operates its physical locations and Website. The Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

83.     Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to include the ADA-required information on the Website reservation system, causing the Website and the services integrated with Defendant's physical locations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

84.     Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden."

85.     Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

86.     Readily available, well-established guidelines exist on the Internet for including the ADA-required information on websites making such websites accessible to the blind and visually impaired. Incorporating the basic components to make the Website reservation system include the ADA-required information would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

87.     Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the NYSHRL, N.Y. Exec. Law § 296(2) in that Defendant has:

a.     constructed and maintained a website that does not contain the ADA-required information on its reservation system making their hotel inaccessible to blind class members with knowledge of the discrimination; and/or

b.     failed to take actions to correct the lack of the ADA-required information in the face of substantial harm and discrimination to blind class members.

88.     Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

89.     Defendant discriminates, and will continue in the future to discriminate against Plaintiff and New York State Sub-Class Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Website and their physical location under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the Sub-Class Members will continue to suffer irreparable harm.

90.     Defendant's actions were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

91.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq*. for each and every offense.

92.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

93.     Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL

94.     Plaintiff, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

95.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

96.     Defendant's location is a place of public accommodation within the definition of N.Y.C. Admin. Code § 8-102(9), and the Website is a service that is integrated with its establishment.

97.     Defendant is subject to NYCHRL because it owns and operates a physical location in New York and the Website, making the Defendant a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

98.     Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update the Website and remove access barriers to its hotel by failing to include the ADA-required information on its reservation system, causing the services integrated with their physical locations to be completely inaccessible to the blind. The inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

99.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

100.    Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

    a.    constructed and maintained a website that does not contain the ADA-required information on its reservation system making their hotel inaccessible to blind class members with knowledge of the discrimination; and/or

    b.    constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

    c.    constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

    d.    failed to take actions to correct the lack of the ADA-required information in the face of substantial harm and discrimination to blind class members.

101.    Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

102.    As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, accommodations and/or opportunities of the Website and their establishments under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

103.    Defendant's actions were and are in violation of the NYCHRL and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

104.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

105.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

106.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

<u>FOURTH CAUSE OF ACTION</u>
DECLARATORY RELIEF

107.    Plaintiff, on behalf of himself and the Class and New York State and City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

108.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of its Website and by extension its physical location and that the Website does not contain the ADA-required information on its reservation system denying blind customers the full and equal access to the goods, services and facilities of

the Website and by extension their physical location, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

109.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

a.    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.,* and the laws of New York;

b.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals

c.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website reservation system into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website contains the ADA-required information making their hotel and guest rooms accessible to and usable by blind and vision-impaired individuals;

d.    A declaration that Defendant owns, maintains and/or operates the Website and the Website reservation system in a manner that discriminates against the blind and vision-impaired and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq*., N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York

e.    An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

f.    Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses;

g.    Pre- and post-judgment interest;

h.    An award of costs and expenses of the action together with reasonable attorneys' and expert fees; and

i.    Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions

of fact the Complaint raises.

Dated: New York, New York
       July 18, 2019

THE MARKS LAW FIRM, PC

Bradly G. Marks
175 Varick St., 3rd Floor
New York, New York 10014
Tel: (646) 770-3775
Fax: (646) 867-2639
brad@markslawpc.com

Jeffrey M. Gottlieb     (JG-7905)
Dana L. Gottlieb       (DG-6151)
GOTTLIEB & ASSOCIATES
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: 212.228.9795
Fax: 212.982.6284
nyjg@aol.com
danalgottlieb@aol.com